Sagaille v Carrega (2021 NY Slip Op 01369)





Sagaille v Carrega


2021 NY Slip Op 01369


Decided on March 09, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 09, 2021
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Sallie Manzanet-Daniels
Barbara R. Kapnick Tanya R. Kennedy Martin Shulman


Index No. 154010/18 Appeal No. 13314 Case No. 2020-02369 

[*1]Chrismy Sagaille, Plaintiff-Respondent,
v
Christina Carrega, Defendant-Appellant, New York Daily News Company, et al., Defendants. _ National Women's Law Center, A Better Balance, American Association of University Women (AAUW), American Federation of State, County and Municipal Employees, AFL-CIO(AFSCME), Autistic Self Advocacy Network, Civil Liberties and Public Policy Program, Clearinghouse on Women's Issues, Cyber Civil Rights Initiative, Desiree Alliance, Equal Rights Advocates, Feminist Majority Foundation, Gender Justice, Girls Inc., Konidaris Law PLLC, KWH Law Center for Social Justice and Change, Legal Aid at Work, Legal Voice, National Alliance to End Sexual Violence, National Asian Pacific American Women's Forum (NAPAWF), National Association of Social Workers (NASW), National Association of Women Lawyers, National Coalition Against Domestic Violence, National Consumers League, National Council of Jewish Women, National Crittenton, National Immigrant Women's Advocacy Project (NIWAP, Inc.), National Network to End Domestic Violence, National Organization for Women Foundation, National Partnership for Women & Families, National Women's Political Caucus,Partnership for Working Families, Religious Coalition for Reproductive Choice, Sister Love, Inc., The Women's Law Center of Maryland,Transgender Law Center, Women Lawyers On Guard Inc., Women of Reform Judaism, Women's Bar Association of the District of Columbia,Women's Institute for Freedom of the Press, and Women's Law Project, Amici Curiae.





Plaintiff appeals from the order of the Supreme Court, New York County (Francis A. Khan III, J.), entered September 9, 2019, which, to the extent appealed from as limited by the briefs, denied defendants' motion to dismiss the claims for libel per se and defamation as against defendant Christina Carrega based upon statements she made to the New York Police Department (NYPD).




Eric Smith Dennis, New York, and Loeb & Loeb, LLP, New York (Sarah Levitan Perry and Christian D. Carbone of counsel), for appellant.
Metcalf & Metcalf, P.C., New York (Nanette Ida Metcalf of counsel), for respondent.
Kirkland & Ellis LLP, New York (Yosey J. Riemer, Joseph M. Sanderson and Pratik K. Ghosh of counsel), for amici curiae.



Manzanet-Daniels, J. 


This appeal raises the issue of whether a sexual assault victim may be subject to a defamation suit based solely on her report to the police of the incident. The lower court held that the making of such a complaint in and of itself amounted to malice sufficient to overcome the qualified privilege attaching to the making of police complaints, finding that reports of sexual assault by their very nature are presumptively malicious. The lower court's ruling rings of the outdated assumptions that have plagued sexual assault victims over time—namely, that women are likely to lie about sexual assaults and that such complaints are inherently vituperative.
Amici cite data showing the disquieting prevalence of sexual assaults. The CDC estimates that in the U.S., 1 in 5 women and 1 in 14 men are raped during their lifetime; in addition, more than two in five women and one in four men suffer other forms of sexual assault during their lifetime.
And yet, sexual assaults remain vastly underreported, primarily due to victims' fear of retaliation.[FN1] It does not escape us that defamation suits like the instant one may constitute a form of retaliation against those with the courage to speak out; most victims cannot afford years of litigation, nor do they wish to have their personal information disclosed through invasive discovery or to relive their personal trauma through litigation, including depositions, filings, and testimony in court. They do not wish to endure continued unwanted interaction with the person alleged to have assaulted them through the litigation process.
The lower court's holding has the effect of dissuading a victim from seeking an order of protection since the sexual assault victim must file a police report in order to obtain an order of protection. It has the effect of emboldening sexual assaulters who seek to weaponize the legal system in order to silence their victims.
Defendant met plaintiff, a former ADA in the sex crimes unit of the Brooklyn District Attorney's Office on April 30, 2017, at the baby shower of a mutual friend. On May 1, 2017, defendant reported that plaintiff had sexually assaulted her while she was driving home. The initial criminal complaint, dated May 3, 2017, charged plaintiff with [*2]two counts of sexual abuse and one count of forcible touching. Defendant alleged that plaintiff "grabbed [her] face and placed [his] tongue into [her] mouth on two occasions, without [her] consent and grabbed [her] breast over [her] clothing without [her] consent." Trial on the matter occurred on June 4 through June 13, 2008. A mistrial was declared on the fifth day of deliberations when the jurors announced that they were unable to reach a unanimous verdict. Thereafter, plaintiff agreed to an adjournment in contemplation of dismissal.
On May 1, 2018, shortly before the criminal trial was to commence, plaintiff filed this action against defendant and her employer, the Daily News, asserting claims for libel per se, defamation, injurious falsehood, and prima facie tort, alleging that she had lied to the police about the sexual assault. Plaintiff alleged that in making certain statements in the complaint, defendant had acted with actual malice. Plaintiff alleged, inter alia, that defendant, at the time a reporter for the Daily News, had reported the putative assault for the purpose of "further[ing] her career by creating a false sex crimes story against an assistant district attorney whose job it was to prosecute sex crimes."
The lower court dismissed the complaint as against the Daily News and dismissed the injurious falsehood and prima facie tort claims against defendant. The court denied defendant's motion to the extent it sought dismissal of plaintiff's claims for libel per se and defamation of a public official. The lower court found that statements to the police were protected by a qualified privilege. The court nonetheless determined that plaintiff's allegations were sufficient to overcome the privilege because actual malice could be inferred from the accusations of "reprehensible criminal conduct." We now reverse and dismiss the complaint.
The doctrine of qualified immunity shields individuals who, like defendant, act "in the discharge of some public or private duty, legal or moral, or in the conduct of [her] own affairs, in a matter where h[er] interest is concerned" (Rosenberg v MetLife, Inc., 8 NY3d 359, 365 [2007] [internal quotation marks omitted]). To overcome the qualified privilege protecting defendant's statements to the police, plaintiff was required to sufficiently allege that she published the statements with actual malice, i.e., that defendant "acted out of personal spite or ill will, with reckless disregard for the statement's truth or falsity, or with a high degree belief that [her] statements were probably false" (Sborgi v Green, 281 AD2d 230, 230 [1st Dept 2001][internal quotation marks omitted] ).
The lower court presumed actual malice from the "reprehensible" nature of the allegedly false accusations of sexual assault against plaintiff. There is no authority, however, for the court's sweeping proposition that it might infer actual malice based solely upon the nature of defendant's complaint.[FN2]
Indeed, such a holding [*3]would effectively extinguish any burden on a defamation plaintiff asserting claims predicated on reports of sexual assault to law enforcement and enable the plaintiff to subvert the shield of qualified privilege that protects victims reporting sexual assault, an unacceptable result.
Plaintiff's allegations fall short of alleging actual malice sufficient to overcome the qualified privilege attaching to defendant's statements to the police. Even as alleged in the complaint, the statements are a straightforward rendition of the incident that defendant claims occurred during a car ride with plaintiff. There was nothing excessive or "vituperative" in the character of the reported statements that would support an inference of actual malice (Sborgi, 281 AD2d at 230 [internal quotation marks omitted]; see Hanlin v Sternlicht, 6 AD3d 334 [1st Dept 2004]). Indeed, it is difficult to see how defendant could have been more succinct or restrained in her description of the events while accomplishing her purpose: to report to the police that she had been the victim of sexual assault.
Plaintiff's allegation that defendant lied "because she saw an opportunity to further her career by creating a false sex crimes story" is entirely lacking in factual basis, speculative, and similarly insufficient to overcome the qualified privilege (see e.g. Matter of Abbitt v Carrube, 159 AD3d 408 [1st Dept 2018]; Weitz v Bruderman, 14 AD3d 354 [1st Dept 2005] [the plaintiff's conjecture that alleged statements were made because the defendant wanted the plaintiff's job insufficient to show that the defendant bore him spite or ill will, much less to show that spite or ill will, as opposed to economic interests, were the motivation for the statements]).
Plaintiff's allegations regarding the subsequent criminal proceedings and the reporting of same in the Daily News are not probative of whether defendant acted with malice at the relevant time, namely, when she went to NYPD (see L.Y.E. Diamonds, Ltd. v Gemological Inst. of Am., Inc., 169 AD3d 589, 591 [1st Dept 2019] [arbitration proceedings could not support an allegation of malice as those proceedings post-dated the statements at issue and thus were not probative of whether the defendant had made the statements with the requisite disregard for the truth]).
Having failed to allege facts sufficient to overcome the qualified privilege attaching to defendant's statements to the police, plaintiff's claims for libel per se and defamation fail, and the complaint must be dismissed.
Accordingly, the order of the Supreme Court, New York County (Francis A. Khan III, J.), entered September 9, 2019, which, to the extent appealed from as limited by the briefs, denied defendants' motion to dismiss the claims for libel per se and defamation as against defendant Christina Carrega based upon statements she made to the New York Police Department (NYPD), should be reversed, on the law, with costs, and the motion granted. The Clerk is directed to [*4]enter judgment dismissing the complaint in its entirety.
Order, Supreme Court, New York County (Francis A. Khan III, J.), entered September 9, 2019, which, to the extent appealed from as limited by the briefs, denied defendants' motion to dismiss the claims for libel per se and defamation as against defendant, reversed, on the law, with costs, and the motion granted. The Clerk is directed to enter judgment dismissing the complaint in its entirety.
Opinion by Manzanet-Daniels, J. All concur.
Manzanet-Daniels, J.P., Kapnick, Kennedy, Shulman, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 9, 2021



Footnotes

Footnote 1: The DOJ estimates that only 23% of sexual assaults are reported to the police (see Bureau of Justice Statistics, Criminal Victimization, 2018, at 8). In the workplace, an estimated 6-13% of employees who are sexually harassed file a complaint with their employer (see EEOC Workplace Harassment Study at II.C).

Footnote 2: Compare Pezhman v City of New York (29 AD3d 164, 169 [1st Dept 2006]), which involved allegations of drug use and other unprofessional conduct in the context of a "campaign of harassment conduct in retaliation for [the] plaintiff's complaint."